No. 262        April 24, 2024        215

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

FATHYM EILEEN MELLO,
nka Fathym Eileen Walker,
*Defendant-Appellant.*

Douglas County Circuit Court
20CR55302; A179615

George William Ambrosini, Judge.

Argued and submitted February 7, 2024.

Carla Edmondson, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Erica Herb, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010 (Count 1), and reckless driving, ORS 811.140 (Count 2). Defendant raises three assignments of error. In her first and second assignments of error, defendant argues that the trial court plainly erred in failing to strike certain testimony by the arresting officer about field sobriety tests (FSTs) that, in defendant's view, was scientific evidence for which the state did not lay an adequate foundation. In defendant's third assignment of error, she argues that the trial court erred in denying her motion for a mistrial. Defendant contends that the prosecutor misstated the burden of proof during closing argument and that the curative instruction that the trial court issued was insufficient to preserve defendant's right to a fair trial. For the reasons that follow, we affirm.

*Officer's testimony about the FSTs:* In defendant's first and second assignments of error, she argues that the trial court plainly erred in failing to strike an officer's testimony about two field sobriety tests that, in defendant's view, was scientific and thus inadmissible because the state did not lay an adequate foundation. As we explain below, we agree with defendant that under our recent decision in *State v. Ortiz*, 325 Or App 134, 528 P3d 795, *rev allowed*, 371 Or 308 (2023), the asserted legal error is plain. However, we decline to exercise our discretion to correct the error.

In reviewing a trial court's evidentiary ruling, "we do so in light of the record that was before the court at the time of the ruling." *State v. Eatinger*, 298 Or App 630, 632, 448 P3d 636 (2019). We consider all pertinent parts of the record in evaluating whether the erroneous admission of evidence was harmless. *Id.*

We begin by describing the facts leading up to defendant's arrest, which we take from testimony presented at trial. An off-duty state trooper, Stone, was a passenger in a car traveling on a state highway when he noticed defendant's car going 45 miles per hour where people typically drive "anywhere from 55 to 75 or 80." Stone observed defendant's car, which was in the slow lane, drift about two to

three feet into the fast lane. The driver in Stone's car tried to pass defendant, and defendant swerved into their lane and almost struck them. Stone believed it was not safe to pass defendant's car because she was "driving like a pinball between the dotted line and the striped line and the solid white line." Stone called dispatch to report defendant's driving. Stone followed defendant's car for seven to eight miles, observing defendant swerving, coming close to the guardrail several times, driving at inconsistent speeds, almost hitting a curb and then overcorrecting, and making turns without using a turn signal. Stone did not observe any distractions to explain defendant's driving, such as an overhead dome light on, animals or other people in the car, or that defendant was using a cellphone. Stone has conducted roughly 80 DUII investigations and testified that he rated defendant's driving as in the "[t]op five to ten percent, conservatively, worst driving that [he has] observed in this job."

Stone relayed his observations over the phone to another officer, Ellis. Ellis pulled up behind defendant's car and observed that defendant failed to stay within her lane. Ellis initiated a traffic stop. Defendant drove into a parking lot and "parked fine." Ellis approached defendant's car and saw her in the driver's side with a small dog in the cab with her. Defendant appeared to be emotional and had "red, watery, and bloodshot eyes." Ellis noticed "a strong odor of an alcoholic beverage coming from within the vehicle." Ellis asked defendant how much she had had to drink, and she said she had had two or two and a half beers, the last one being over three hours earlier.

Defendant explained that she was bringing her ex-boyfriend's French Bulldog, Chunk, back to him. Ellis asked if there was any reason the dog would cause her bad driving, and defendant said, "No. Because I was actually dealing with the dog and that was *** my bad. That was my bad." Ellis asked defendant if she would consent to field sobriety tests (FSTs), and she said yes.

After defendant consented to the FSTs and stepped out of the car, Ellis asked if she was "sick or injured." Defendant said she had had surgery the previous week on her mouth and was on pain medications and antibiotics.

Ellis asked if she had balance problems, and she said she has scoliosis.

Ellis testified that he administered four FSTs to defendant, including the horizontal gaze nystagmus (HGN) test, the vertical gaze nystagmus (VGN) test, the walk-and-turn test, and the one-leg-stand test. Ellis observed six out of six clues indicating impairment on the HGN test, and also observed vertical nystagmus when he administered the VGN test on defendant. Ellis observed six out of eight clues on the walk-and-turn test, and three out of four clues on the one-leg-stand test, the results of both tests indicating impairment.

After defendant had performed the FSTs, Ellis asked her to rate her intoxication level on a scale of one to ten, and she said three. Ellis asked her if she thought she could have performed better on the FSTs if she had not been drinking and she said "oh, hands down." Ellis arrested defendant for DUII.[1]

Ellis testified in detail about the FSTs, including how he administers them, the training he had received about the tests, and how defendant performed on them. Ellis testified that when he administered the walk-and-turn test, he observed several clues indicating impairment, including stepping out of the instruction position; stepping offline; pausing during the test and asking questions; missing heel to toe; taking an incorrect number of steps down the line; and making an incorrect turn by "shuffling her feet." Ellis testified that "the walk and turn took abnormally long to get through the instructions because [defendant] just kept kind of talking, rambling, and asking [him] to repeat things." During the one-leg-stand test Ellis observed defendant sway, put her foot down, and raise her arms—all clues indicating impairment.

In testifying about the HGN test, Ellis said that he "learn[ed] that there's been studies done to prove how accurate [the test] can be. And the HGN test, *** there's six possible clues. If, if we see four clues we know that that's

---

[1] Ellis administered a breathalyzer test to measure defendant's blood alcohol content. Before trial, defendant moved to suppress the results of that test, and the court granted the motion. That motion to suppress is not at issue in this appeal.

a very high percentage, in fact, 88 percent that they'll be an impaired driver. Four of six." Ellis also testified that "if someone has vertical nystagmus it's considered to be a high level of intoxication for that person." The prosecutor then asked Ellis, "And you said there's studies. What's the study that you're *** referencing there?" Ellis responded, "I'm referencing the San Diego study."

During closing argument, the prosecutor discussed defendant's "[n]ine miles of continuous terrible driving," her physical signs of impairment, her poor performance on the walk-and-turn and one-leg-stand tests, and her statements to Ellis. The prosecutor also said that the "HGN test is scientific evidence. It is scientific evidence of impairment. *** [T]here have been studies about this. *** Six out of six plus VGN is an indication that this person is probably impaired." He went on to state that "[t]he HGN is a fabulous test. It's used nationwide ***. It's scientific and it's an excellent way for our officers to test for impairment."

Defendant argued that there were "alternate explanations" for her driving, including that she was emotional and that Chunk "had been all over the cab of the car." Defendant also argued that she performed poorly on the FSTs because she has scoliosis, had recently had surgery, and that she was cold and wearing flip flops. Defendant also argued that the FSTs were not administered properly, stating during closing argument that they "were not done scientifically."

The jury found defendant guilty of one count of DUII and one count of reckless driving.

As noted above, defendant on appeal contends that Ellis's testimony about the HGN and the VGN was scientific such that it required the state to lay a foundation under the *Brown/O'Key* factors. *State v. Brown*, 297 Or 404, 687 P2d 751 (1984); *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995). We agree with defendant that under *Ortiz*, the trial court committed plain error by allowing Ellis's testimony about the HGN and VGN tests because that testimony "derive[d] its force from scientific principles." 325 Or App at 139. Ellis

testified that four out of six clues on the HGN test indicates "88 percent that they'll be an impaired driver," and that "there's been studies done to prove how accurate" the HGN test can be. He also referenced "the San Diego study" after stating that vertical nystagmus indicates "a high level of intoxication for that person." That testimony was functionally similar to the testimony in *Ortiz*, where the officer testified that "the FSTs are 'designed to determine impairment,' nationally 'standardized,' and supported by studies 'prov[ing] their validity.'" *Id.* at 136 (brackets in original). Thus, because the state did not lay a foundation as required by *Brown* and *O'Key*, the trial court plainly erred in failing to strike Ellis's testimony. *Id.* at 139 ("[A] trial court has a *sua sponte* duty to exclude clearly scientific testimony regarding FSTs when it is presented without a proper foundation.").

We further conclude that, because the testimony directly related to the central factual issue in the case and scientific testimony is particularly persuasive, the error in permitting the relevant testimony was not harmless. *State v. Whitmore*, 257 Or App 664, 672, 307 P3d 552 (2013) (erroneously admitted evidence that relates to a central factual issue is more likely to have affected the jury's determination); *Eatinger*, 298 Or App at 646 (erroneous admission of scientifically based testimony weighs against a determination that an error was harmless because scientific testimony "has manifest potential to influence a jury").

Here, the central factual issue was whether defendant was "under the influence of an intoxicant," and because evidence of defendant's BAC had been suppressed, the state was required to prove that she had been impaired to a perceptible degree while driving. ORS 813.010(1)(b)[2]; *Eatinger*, 298 Or App at 646. Defendant's performance on the FSTs and Ellis's testimony about the FSTs bore directly on whether defendant was intoxicated. Further, as explained above, the testimony was particularly persuasive. Accordingly, we cannot conclude that such testimony had little likelihood of affecting the verdict.

---

[2] ORS 813.010 was amended in 2023. *See* Or Laws 2023, ch 498, § 3. However, because those amendments do not affect our analysis, we cite the current version in this opinion.

Having concluded that the trial court's failure to *sua sponte* strike the pertinent testimony was not legally "harmless," we must next determine whether we will exercise our discretion to correct the error. *State v. Inman*, 275 Or App 920, 936, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) ("[T]he harmless-error analysis does not govern our discretionary decision about whether to address unpreserved claims of error."). In exercising our discretion, we consider factors such as the gravity of the error, "the nature of the case," and the ends of justice in the particular case. *Id.* at 928 (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991)).

The likelihood that an error affected the verdict goes to its gravity and to the ends of justice, and "our assessment of where [the error] falls on the spectrum of 'likelihood' of having affected the verdict can be an important consideration to the exercise of discretion." *State v. Horton*, 327 Or App 256, 264, 535 P3d 338 (2023). In defendant's view, the persuasiveness of scientific testimony and the fact that the prosecutor highlighted the scientific nature of the HGN and VGN tests during closing arguments warrants the exercise of our discretion. However, in contrast to cases where we have exercised our discretion to correct a plain error, the likelihood that the error affected the verdict here is low. In *Ortiz*, for example, the officer only administered the walk-and-turn and the one-leg-stand FSTs, and she bolstered her testimony about both of those FSTs with testimony that we concluded was scientific in nature. 325 Or App at 136, 138. Similarly, in *State v. Reid*, 312 Or App 540, 543-44, 492 P3d 728 (2021), the arresting officer, referring generally to all of the FSTs, testified that they were pass or fail—testimony that we concluded was scientific.

In contrast, here Ellis administered the HGN, VGN, walk-and-turn, and one-leg-stand FSTs, and Ellis's scientific testimony narrowly applied only to the HGN and VGN tests. The testimony was thus not as broad as that in *Ortiz* and *Reid*. Moreover, we agree with the state that the additional evidence of defendant's impairment in this case, particularly Stone's observations of defendant's poor driving for nearly nine miles, further distinguishes it from

*Ortiz* and *Reid*. *Ortiz*, 325 Or App at 135 (officer arrived on scene after neighbor reported she heard a car "screech" to a stop in a driveway); *Reid*, 312 Or App at 541 (officer stopped the defendant for driving 15 miles over the speed limit). Consequently, because there was additional evidence of defendant's impairment and, as discussed above, some of Ellis's testimony about the FSTs was permissible, the error here was not as grave as in cases where we have exercised our discretion to correct the error. *See Inman*, 275 Or App at 933-34 (whether the record includes additional evidence of a defendant's guilt is a factor that we have considered in declining to exercise our discretion to correct plain error).

Further, defendant argued during closing argument that the FSTs "were not done scientifically," which supports the state's contention that defendant may have had a strategic reason for failing to object to the scientific testimony. *See State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007) ("the possibility that defendant made a strategic choice not to object" is a factor that we may consider in deciding whether to exercise our discretion to correct a plain error). If defendant herself characterized the administration of the FSTs as being scientific, it is reasonable to infer that defendant had a strategic reason for not objecting during the officer's testimony describing how he administered the FSTs and instead allowing the scientific testimony but then arguing that the tests were not administered in accordance with strict requirements.

Additionally, had defendant objected to Ellis's testimony, the trial court could have easily corrected any error by striking the testimony and instructing the jury to disregard it. *Inman*, 275 Or App at 935 ("[T]he ease with which any error could have been avoided or corrected should be a significant factor in an appellate court's decision whether to exercise its discretion to correct a plain, but unpreserved, error.").

In short, the error here was not particularly grave in terms of its likelihood of affecting the verdict, defendant may have failed to object for a strategic reason, and the error could have been easily avoided if defendant had objected. Accordingly, consistent with the policy that we

should exercise "utmost caution" in addressing unpreserved claims of error, we decline to exercise our discretion to correct the error. *Ailes*, 312 Or at 382 (exercising discretion to address an unpreserved claim of error "is contrary to the strong policies requiring preservation and raising of error").

*Motion for a mistrial:* During closing arguments, the prosecutor made the following statements: "Nine miles of continuous terrible driving. That's a noticeable or perceptible degree [of impairment]. Red and watery eyes. There could be other explanations but under the totality of the circumstances that could be a sign." The prosecutor also told the jury, "[Y]ou're the ones who get to decide what's reasonable. * * *. What is reasonable here based on the totality of these circumstances?" Defendant objected, arguing that the prosecutor misstated the law to the jury and that it was grounds for a mistrial. The court denied the motion for a mistrial but told the jury "I want to admonish you that the prosecutor's statements about what is reasonable, that's not the standard in this case. The standard and the burden of proof carried by the State is proof beyond a reasonable doubt." After closing arguments, the court read the jury instructions to the jury, including an instruction on proof beyond a reasonable doubt.

Defendant assigns error to the trial court's denial of her motion for a mistrial, arguing that the court's curative instruction was insufficient to ensure that the jury understood the state's burden of proof. We review the trial court's ruling for abuse of discretion, *State v. Worth*, 231 Or App 69, 74, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010), and affirm.

We disagree that the prosecutor's statements were so prejudicial that the trial court's curative instruction was insufficient to preserve defendant's right to a fair trial. In our view, the curative instruction that the trial court issued was sufficient to cure any prejudice to defendant. *See State v. Chitwood*, 370 Or 305, 311, 518 P3d 903 (2022) ("Generally, a proper jury instruction is adequate to cure any presumed prejudice from a prosecutor's misconduct.").

Unlike in *Chitwood*, the prosecutor here did not directly refer to and misstate the standard of reasonable

doubt. As the state points out, the prosecutor made the statements in the context of rebutting defendant's argument that there were alternate explanations for defendant's driving, physical signs of impairment, and performance on the FSTs. Framed slightly differently, the prosecutor did not make the statements in the context of discussing the state's burden of proving the elements of the offense beyond a reasonable doubt, nor did the prosecutor "appeal[] to the jurors' moral sensibility about an irrelevant circumstance." *Chitwood*, 370 Or at 317. Moreover, the trial court instructed the jury on the reasonable doubt standard after closing arguments. *See id.* at 317-18 (explaining that people tend to be influenced most by the last event in a sequence, and "the timing of the prosecutor's remark about the burden of proof exacerbated the risk that it would be prejudicial [because] it was the last thing that the jury heard before beginning deliberations"). Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Affirmed.