118 November 6, 2024 No. 805

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
CHRISTINE GAY HAUSER,
*Defendant-Appellant.*

Wasco County Circuit Court
21CR03606; A177153

Janet L. Stauffer, Judge.

Argued and submitted December 19, 2023.

Peter G. Klym, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.*

JOYCE, J.

Affirmed.

_____

* Egan, J., *vice* Jacquot, J.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. She raises two assignments of error.[1] First, she argues that the trial court plainly erred when it failed to exclude the portion of a body-camera recording in which defendant refused to provide a urine sample. Second, she argues that the trial court erred in overruling her objection to testimony by a drug recognition evaluator (DRE) about the effects that dilated pupils have on vision. We affirm.

*Refusal to Provide a Urine Sample.* In *State v. Banks*, 364 Or 332, 336, 342, 434 P3d 361 (2019), the Oregon Supreme Court held that Article I, section 9, of the Oregon Constitution, prohibits the state from using a defendant's refusal to consent to a breath test as evidence of guilt in a DUII prosecution—although "no similar bar applies when an officer seeks only a [person's] physical cooperation in conducting a constitutionally authorized search." In *State v. Hamilton*, 330 Or App 258, 260, 543 P3d 704 (2024), we concluded that the reasoning in *Banks* extends to refusals to perform field sobriety tests.

Defendant argues that the reasoning in *Banks* and *Hamilton* applies equally where a person refuses to consent to an officer's request for a urine sample. Therefore, she reasons that the trial court plainly erred when it allowed the state to admit the portion of a recording in which defendant refused to provide a urine sample.

Even assuming that the trial court committed plain error in admitting the evidence, we decline to exercise our discretion to correct that plain error. *See State v. Ortiz*, 372 Or 658, 664, 554 P3d 796 (2024) (explaining that plain-error review is a two-step inquiry, requiring us to determine (1) whether the error qualifies as "plain" and (2) whether to exercise our discretion to correct it). That is because defendant appears to have made a purposeful choice not to object to the disputed portion of the video recording. *See, e.g.*, *State v. Mello*, 332 Or App 215, 223, 549 P3d 42, *rev den*, 372 Or

---

[1] Defendant also pleaded guilty to the violation of unlawful possession of methamphetamine, ORS 475.894(2)(a), but she does not challenge that conviction on appeal.

763 (2024) (declining to exercise plain-error discretion, in part, because the defendant may have had "a strategic reason for failing to object").

Prior to trial, defendant told the trial court that the parties were "in agreement to basically introduce, * * * three videos in their entirety, with some sections in agreement not to be published to the jury." The state and defense largely agreed on the portions of the videos that they wanted to be redacted, save for one area of disagreement:

> "[DEFENSE COUNSEL:]   The only thing that I think we're in slight disagreement on is [the DRE's video], where there's talk of prior cocaine use, like 20 years ago. I'm arguing that is not relevant."

Aside from that one area of disagreement, it appears that defendant was in favor of showing as much of the videos as possible to the jury. In fact, the prosecutor explained (without any disagreement from defendant) that defendant wanted "almost everything" to be played for the jury:

> "[THE PROSECUTOR:]   It's difficult because we've made plenty of cuts that just lift out and you can just keep playing most of the video. There are large sections that I honestly probably ought to (indiscernible) play, *but I know [defense counsel] wants almost everything unless there's a reason to keep it out*."

Given the stipulation of the parties to the admissibility of the video and the fact that defendant did dispute a specific portion of the video (not related to her refusal to provide a urine sample), it is inferable that defendant had some strategic purpose in failing to object to the portion that she now challenges on appeal. Therefore, even assuming that the trial court erred, we decline to exercise our discretion to correct it on plain-error review.

*Effects of Pupil Dilation.* Next, defendant argues that the trial court erred in overruling her objection to a DRE's testimony that dilated pupils "create[] difficulty in lighting conditions." Specifically, she argued that the testimony was "getting into scientific evidence which is outside the [DRE's] ability to testify to." The state explained that the DRE was qualified to testify about how a "physical condition

can affect * * * driving performance." After the court over-ruled defendant's objection, the DRE testified:

> "So, when a person's pupils are dilated * * * they are receiving more light than if they were in a normal * * * or if they were within the average size range.
>
> "So, when a person has a light shined into their eyes while they're in a dilated condition, they're taking in more light, and it's impairing their ability to see.
>
> "When a person has a light shined in their eyes, like headlights coming at you, your pupils will constrict to min-imize the amount of lights coming into your eyes. And when a person's eyes don't react appropriately to the light, it pres-ents difficulty in seeing what's going on around them."

On appeal, defendant does not dispute that the DRE could testify that he was trained to measure pupil dilation, that pupil dilation is a symptom of stimulant use, and that defendant's pupils were dilated and slow to react to changes in light. Indeed, the DRE testified without objection that defendant's pupils were one millimeter larger than average in normal light, within the normal range in near-total dark-ness, and were slow to react to light—the first and last points being a symptom of stimulant intoxication. Instead, defen-dant argues only that the DRE's training "does not provide foundation for [the DRE's] scientific testimony about the phys-iological effect of dilated pupils and how they affect driving."

However, even assuming defendant is correct, we must affirm if there is little likelihood that the error affected the verdict. *State v. Davis*, 351 Or 35, 261 P3d 1197 (2011). We recognize that "scientific evidence has manifest potential to influence a jury." *State v. Eatinger*, 298 Or App 630, 646, 448 P3d 636 (2019). However, the erroneous admission of such evidence can still be harmless if it is tangential to the issues in dispute at trial. *See State v. Roden*, 296 Or App 604, 620, 437 P3d 1203 (2019) (holding that, given the "way the issues were framed, the [scientific] evidence * * * was tangential, and therefore harmless"). We conclude that that was the case here.

At trial, the state bore the burden to prove that defendant was driving while under the influence of an intox-icant. ORS 813.010. As the court instructed the jury, the

state had to prove that defendant's "physical or mental faculties were adversely affected by the use of intoxicants to a noticeable or perceptible degree." Notably, defendant did not dispute eyewitness testimony that defendant was driving poorly—specifically, that defendant was "swerving \*\*\* all over the road" and hit a curb. And it was undisputed that defendant was unable to physically perform some of the field sobriety tests and appeared sleepy. But defendant testified that she had last used methamphetamine two days before her arrest. Her theory at trial was that her poor driving and physical limitations were caused by pain, fatigue, and other non-drug-related factors.

As framed by the parties then, there was no real dispute at trial that *something* was adversely affecting defendant's physical or mental faculties to a noticeable or perceptible degree, given her very poor driving and her display of balance issues, confusion, sleepiness, and other such symptoms. Rather, the central issue at trial was whether those adverse effects were the result of drug use or, instead, the result of pain, fatigue, or some other nonculpable cause. Certainly, testimony that dilated pupils were a symptom of recent methamphetamine use bore directly on that issue because it suggested that, contrary to defendant's testimony, defendant had used methamphetamine recently, making it more likely that, consistent with the rest of the DRE testimony, methamphetamine caused the other adverse effects. But defendant does not challenge that testimony on appeal. Instead, defendant argues that the DRE improperly testified that pupil dilation is an adverse (as opposed to neutral or even beneficial) effect of methamphetamine use because it can negatively affect vision. In defendant's view, that testimony likely affected the verdict because it showed that one adverse effect that defendant may have been suffering was caused by methamphetamine use. However, considering the variety of adverse effects that defendant displayed—including confusion and sleepiness, which a toxicologist testified are consistent with the 'downside' of methamphetamine use—we conclude that there is little likelihood that the jury's verdict was affected by whether eye dilation was a negative rather than neutral physiological effect.

Affirmed.