226 December 31, 2025 No. 1143

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MATTHEW JAMES ARENA-EASTON,
*Defendant-Appellant.*

Linn County Circuit Court
19CR50352; A181607

Brendan J. Kane, Judge.

Argued and submitted May 9, 2025.

James Brewer, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

HELLMAN, J.

Reversed and remanded.

**HELLMAN, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. In two assignments of error, defendant argues that the trial court plainly erred when it permitted a police officer to testify about defendant's performance on two field sobriety tests (FSTs). Specifically, the officer testified that she observed two clues while defendant performed the one-leg-stand and the walk-and-turn tests and that his scores indicated that he was impaired. We agree with defendant that, under *State v. Hall*, 336 Or App 812, 562 P3d 284 (2024), *rev den*, 373 Or 712 (2025), the trial court plainly erred by admitting that testimony without requiring the state to lay a foundation for its admission because the jury would have perceived that testimony as scientific. Because the testimony related to the central factual issue at trial, the error was not harmless. We further exercise our discretion to review and correct the error because the gravity of the error and the ends of justice support reversal in this case. Accordingly, we reverse and remand.

We review the admission of scientific evidence for legal error. *State v. Beltran-Chavez*, 286 Or App 590, 610, 400 P3d 927 (2017). In reviewing a trial court's evidentiary ruling, "we do so in light of the record that was before the court at the time of the ruling." *State v. Mello*, 332 Or App 215, 217, 549 P3d 42, *rev den*, 372 Or 763 (2024) (internal quotation marks omitted). We consider all pertinent parts of the record to determine whether the erroneous admission of evidence was harmless. *Id.* "We do not review unpreserved errors unless the error is plain, which occurs when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without our having to choose among competing inferences." *Hall*, 336 Or App at 813 (citing *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013)). If we determine that the trial court plainly erred, we must then decide whether to exercise our discretion to review and correct the error. *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006).

We begin by describing the facts leading to defendant's arrest, which we take from the testimony presented

at trial. In the early morning hours, Officer Bell began to follow a car with a broken headlight and observed defendant driving above the speed limit, braking "suddenly and inconsistent[ly]," failing to maintain a lane, and crossing over the fog line by approximately "half of the vehicle." Bell activated his patrol car's overhead lights to initiate a stop. Defendant did not immediately pull over and made several turns before eventually stopping. When questioned by Bell, defendant asserted that he had not used any substances that day and denied that he was impaired. Officer Williams, a drug recognition expert, arrived on the scene and observed that defendant made "jerky movements," that "his mouth looked to be dry," and that he had "watery, bloodshot eyes."

Defendant agreed to perform FSTs, and Williams administered three tests: the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Williams did not observe any signs of impairment during the HGN test. During the walk-and-turn test, in which defendant was asked to take a series of steps "heel-to-toe," he "missed heel-to-toe" "between his seventh and ninth step," took "exaggerated steps," and struggled to follow Williams's directions. During the one-leg-stand test, Williams observed that defendant had "visible leg tremors," that he "swayed while balancing," and that he "used his arms for balance." When asked to rate his level of intoxication on a scale from zero to 10, he rated himself as a zero. Based on defendant's performance on the FSTs, as well as Bell's observations of his driving and Williams's observations of his appearance and demeanor, Williams arrested defendant for DUII.

At the station, Williams administered a breath test, which showed that defendant's blood alcohol content was 0.00 percent. Defendant agreed to provide a urine sample, which tested positive for methamphetamine and its metabolite amphetamine. According to a forensic scientist, methamphetamine can be detected in urine "for one to four days, maybe longer than that in a urine sample, but the effects should only last typically four to eight hours."

At trial, Williams testified about defendant's performance on the FSTs. During cross-examination, defendant

questioned Williams about the total number of clues that officers look for:

"Q.    *** [W]hen you're looking at the horizontal gaze nystagmus test, how many clues are you looking for for impairment?

"A.    Total of six.

"Q.    Six clues. And how many clues did [defendant] have?

"A.    He did not have any clues. He did not have HGN.

"Q.    Okay. So, zero out of six clues for that. And then when we're looking at the vertical nystagmus, how many clues are we looking at there?

"A.    One.

"Q.    Just one. And did he have vertical nystagmus?

"A.    Nystagmus? No.

"Q.    Nystagmus, sorry. No. Okay. So, zero out of one for that one as well?

"A.    Correct.

"Q.    When we're looking at walk and turn, how many clues are we looking at there?

"A.    Eight clues.

"Q.    Eight clues. And how many did [defendant] have?

"A.    He—missteps, stopped walking and—so he had two.

"Q.    So, two out of eight, is that right?

"A.    Correct.

"Q.    And then the one leg stand, how many clues are we looking at there?

"*****

"A.    Actually, he had three—no wait, hold on—and he missed—yeah, he had three.

"Q.    One-leg-stand, how many clues are we looking at there?

"A.    Four.

"Q.    Four? And how many did [defendant] have?

"A.    He had two.

"Q.    Two. Two out of four."

On redirect, the state elicited further testimony concerning the clues Williams observed while administering the FSTs:

"Q.    And then [defense counsel] asked you about how many clues you saw on the walk and turn, and how many there were in total—

"A.    Yes.

"Q.    —you indicated there were eight clues total for the walk and turn?

"A.    Correct.

"Q.    Based on your training and experience, how many clues were you taught that show impairment?

"A.    Two.

"Q.    And so you saw two on the walk and turn?

"A.    Correct.

"Q.    And then for the one-leg-stand, you indicated that there were a total of four clues?

"A.    Correct.

"Q.    And based on your training and experience, how many clues were you taught to show impairment?

"A.    Two.

"Q.    And then you saw two?

"A.    Correct."

 The jury convicted defendant of DUII, and this appeal followed.

Based on our recent decision in *Hall*, we readily conclude that the trial court plainly erred in admitting Williams's testimony that the presence of a certain number of clues on the walk-and-turn and one-leg-stand tests show impairment. That testimony indicated that those FSTs are "able to measure impairment objectively and that a specific

numerical score can prove that the subject is impaired." *Hall*, 336 Or App at 819-20. Because a jury "would perceive the proposition underlying th[at] testimony as scientific," *id.* at 819, the state was required to lay a foundation under *State v. Brown*, 297 Or 404, 687 P2d 751 (1984), and *State v. O'Key*, 321 Or 285, 899 P2d 663 (1995).

In arguing to the contrary, the state contends that any error was not plain because the challenged testimony "was admissible to explain the testimony elicited on cross and to prevent the jury from being misled." In the state's view, because it was defendant who first "interjected the concept of a specified number of clues being associated with each FST" on cross-examination, the "explanatory testimony" elicited by the state on redirect was admissible under a theory of curative admissibility, or alternatively, because defendant "opened the door" to that testimony. We disagree with the state's argument.

Under the curative admissibility rule, "where one party offers *inadmissible* evidence, which is received, the opponent may then offer similar facts whose only claim to admission is that they negate or explain or counter-balance the prior inadmissible evidence, presumably upon the same fact, subject matter or issue." *State v. Apodaca*, 291 Or App 268, 273, 420 P3d 670 (2018) (emphasis added; internal quotation marks and brackets omitted). More generally, a party "'opens the door' when it introduces or elicits evidence of an issue at trial. Once the door is open, the other party may counter or impeach with relevant evidence of their own, even if that evidence would have been otherwise irrelevant." *Lawrence v. Oregon State Fair Council*, 330 Or App 405, 411 n 6, 543 P3d 724 (2024).

The doctrine of curative admissibility does not apply here because defendant did not elicit inadmissible evidence during his cross-examination of Williams. As we explained in *Hall*, an officer may testify "that they observed a certain number of clues on the walk-and-turn test and the one-leg-stand test" without a scientific foundation because such testimony relates to "commonly known observable symptoms or signs of *** impairment that comport with jurors' own knowledge and experience." 336 Or App at 822. However,

"without a proper foundation, officers cannot go further and testify that observing two or more clues on those tests *indicates impairment*," because "[t]hat testimony is the equivalent of testifying that the subject failed the tests, which is scientific evidence that is only admissible subject to establishing the scientific validity of the evidence." *Id.* (emphasis added). Within that framework, the testimony elicited by defendant on cross that Williams observed two clues out of a specified number of clues on the walk-and-turn and one-leg-stand tests was admissible without a scientific foundation, but the state was required to establish that foundation in order to admit Williams's testimony that those scores indicated that defendant was in fact impaired.

We further reject the state's argument that defendant's line of questioning on cross "opened the door" to scientific testimony. A party "opens the door" to inadmissible evidence when the party elicits that evidence, thereby permitting the opposing party to inquire about it. *See State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den*, 498 US 879 (1990) ("A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination relating to those same statements."); *Black's Law Dictionary* 1311 (12th ed 2024) (defining "opening the door" as "[a]n attorney's conduct or questions that render otherwise inadmissible evidence or objectionable questions admissible"). Here, defense counsel did not elicit inadmissible evidence. As we have explained, Williams's testimony about the number of clues was not in and of itself scientific and was therefore admissible.

A party can also "open the door" to otherwise inadmissible evidence when the inadmissible evidence is necessary to counter or impeach the evidence the party has elicited. *See Apodaca*, 291 Or App at 275-77 (explaining that the defendant opened the door to the admission of evidence of his prior bad acts by eliciting testimony that he had not "engaged in the type of repeated abuse that he contends would be typical in a domestic-violence situation"). In those situations, evidence that would otherwise be categorically prohibited at trial, like prior bad acts, is permitted in

response. *State v. Grey*, 175 Or App 235, 249-50, 28 P3d 1195 (2001), *rev den*, 333 Or 463 (2002) (the defendant "opened the door" to admission of evidence of prior act that otherwise would be inadmissible under OEC 404(3)). But here, Williams's testimony that defendant's score on the FSTs indicated impairment was not "inadmissible" in the same way. That testimony was directly relevant to the central factual question at trial, and its admission was not otherwise prohibited under any exclusionary rule of evidence. Indeed, the evidence would have been admissible if the state had laid the proper foundation, regardless of defendant's questions on cross-examination. Accordingly, we are not persuaded that defendant's questioning on cross somehow excused the state from laying a scientific foundation as required under *Brown* and *O'Key*, or that his questions relieved the trial court of its duty to serve as a "gatekeeper" to "ensure[] that the trier of fact does not attach an undue aura of reliability to 'scientific' evidence that is not scientifically valid." *O'Key*, 321 Or at 302 n 20.

We therefore conclude that the trial court plainly erred by permitting the officer to testify that defendant's scores on the walk-and-turn and one-leg-stand tests indicated that he was impaired. We further conclude that the error in permitting the testimony was not harmless because the testimony directly related to the central factual issue in the case, specifically, whether defendant drove while under the influence, and scientific testimony "has manifest potential to influence the jury, which is why the proponent of the evidence must establish a foundation showing that the underlying science is valid." *State v. Redman*, 338 Or App 384, 395, 566 P3d 5 (2025) (internal quotation marks omitted).

Finally, we exercise our discretion to review and correct the error. In deciding whether to exercise our discretion to correct a plain error, we consider factors such as the gravity of the error, the nature of the case, and the ends of justice in the particular case. *Mello*, 332 Or App at 222 (citing *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991)). The likelihood that an error affected the verdict goes to the gravity of the error and the ends of

justice, and our assessment of where the error "falls on the spectrum of 'likelihood' of having affected the verdict can be an important consideration to the exercise of discretion." *Mello*, 332 Or App at 222 (citing *State v. Horton*, 327 Or App 256, 264, 535 P3d 338 (2023)). In this case, we conclude that those factors weigh in favor of exercising our discretion.

Here, the testimony about defendant's numerical score on the FSTs was important to the state's case, and as the proponent of the disputed testimony, it had the burden to lay the requisite foundation. *See State v. Bevan*, 235 Or App 533, 540, 233 P3d 819 (2010) ("The proponent of the evidence has the burden to establish its scientific validity."). The state emphasized Williams's testimony in its closing argument, specifically noting that "[t]wo clues out of eight in the walk-and-turn shows impairment" and "two clues on the one-leg-stand shows impairment." Although Williams also testified that defendant made "jerky movements," that "his mouth looked to be dry," and that he had "watery, bloodshot eyes," Williams's testimony that defendant's scores on the FSTs indicated that he was impaired provided objective support for her otherwise subjective assessment of defendant's intoxication.

Moreover, the other evidence of defendant's impairment was not overwhelming. Defendant denied that he was under the influence, and his BAC was 0.00 percent. A urine test found the presence of methamphetamine in defendant's system; however, because methamphetamine may be detected in a person's urine days after use, it is not clear whether defendant used any substances close in time to when he was driving. In that context, Williams's scientific testimony likely had a significant impact on the jury's verdict, and we therefore conclude that the error was sufficiently grave such that the ends of justice support reversal.

In arguing otherwise, the state contends that defendant may have made a strategic choice not to object to Williams's testimony.[1] *See State v. Fults*, 343 Or 515, 523,

---

[1] As we observe in another case issued this same day, "our recent case law has left unresolved the question whether a party's strategic choice not to object is relevant to the *existence* of plain error, or relevant only to the discretionary choice to correct such an error, or both." *State v. Vaninetti*, __ Or App __, __, __ P3d __ (2025) (slip op at 8) (citing *State v. Chitwood*, 370 Or 305, 334 n 2, 518 P3d 903

173 P3d 822 (2007) (explaining that the possibility that the defendant may have made a strategic choice not to object weighs against the exercise of discretion). Specifically, the state argues that because defendant first elicited testimony about the number of clues associated with each FST, we may infer that he chose not to object to the testimony he now challenges on appeal as it was consistent with his theory of the case. The record here does not support that inference. In closing, defendant argued that, on the walk-and-turn test, two clues were not "even 50 percent" of the total possible clues, while on the one-leg-stand test, "two out of four clues" was "a little higher" although there were "reasonable explanations" as to "why that test was especially difficult for [defendant]." In particular, he worked that day doing "manual labor in construction and he was sore." Thus, the defense theory appeared to be that Williams observed only a small number of total possible clues and that there were innocent explanations for the clues that she did observe. Consequently, the testimony elicited by the state on redirect *undercut* defendant's theory by establishing that defendant's score on those FSTs indicate that he was impaired.[2] *Compare with Mello*, 332 Or App at 223 ("If [the] defendant herself characterized the administration of the FSTs as being scientific, it is reasonable to infer that [the] defendant had a strategic reason for not objecting during the officer's testimony describing how he administered the FSTs and instead allowing the scientific testimony but then arguing that the tests were not administered in accordance with strict requirements.").

---

(2022) (Garrett, J., dissenting) (emphasis in original). Because we conclude that the record in this case does not support an inference that defendant had a strategic reason to not object to the testimony challenged on appeal, we do not address that issue here.

[2] By contrast, in *Vaninetti*, __ Or App at __ (slip op 7-8), we declined to exercise our discretion to correct any plain error in admitting testimony that two of eight clues on the walk-and-turn test indicates impairment. In that case, during cross-examination, the defendant questioned the officer about "the number of clues on each test that would be considered a fail," and noted that the defendant had in fact "passed" two out of three FSTs. *Id.* at __ (slip op 3) (internal quotation marks omitted). Because the defendant chose to *confirm* the numerical threshold for impairment on the walk-and-turn test and argued during closing that she did not meet those requirements on two other FSTs, we inferred that the defendant made a strategic decision not to object to the testimony challenged on appeal, and thus, we declined to exercise our discretion to correct the error. *Id.* at __ (slip op 10).

In sum, we conclude that the trial court plainly erred in admitting the scientific evidence without requiring the state to lay the requisite foundation and that the error was not harmless. We further conclude that the gravity of the error and the ends of justice support reversal and that the record does not otherwise support an inference that defendant made a strategic decision to not object to the disputed testimony. Thus, we exercise our discretion to correct the error.

Reversed and remanded.