GARRETT, J.
*392 Defendant appeals a judgment of conviction for one count of sexual abuse in the first degree, ORS 163.427. On appeal, defendant raises two assignments of error. We reject without discussion the second assignment, which challenges the proportionality of defendant's sentence under State v. Rodriguez/Buck , 347 Or. 46, 217 P.3d 659 (2009). We write to address the first assignment, in which defendant argues that the trial court plainly erred in failing to sua sponte strike the testimony of a witness who said that she "totally believed" the victim's disclosure of abuse. For the reasons explained below, we conclude that the trial court did not plainly err, and we therefore affirm.
Defendant was charged by indictment with one count of first-degree sexual abuse based on his alleged contact with a 13-year-old girl, B. Defendant waived his right to a jury trial. At the bench trial, the state presented evidence consisting of B's own testimony as well as the testimony of witnesses who described what B had told them about defendant's actions.
The evidence established that defendant moved in with B, her mother, and her older brother when B was seven or eight years old. B testified that in November or December 2012, when she was 13, defendant touched her vaginal area over her clothes. B testified that she shared that information with her friend, D, within several days of the incident. Several months later, in March or April 2013, B and D together told D's mother, Strawn, about the incident. Strawn testified that she did not immediately share B's disclosure with authorities because B had asked her not to, explaining that she feared the consequences if defendant got in trouble because he was the sole provider for the family. In the course of the state's direct examination of *349 Strawn, the prosecutor asked Strawn to describe her reaction to B's disclosure, and Strawn testified, "That it wasn't right. I was a little bit, you know, a little shocked at it, because [defendant's] always been, you know, so, like a father figure to her. But, I mean, I totally, I believed her."
There was also evidence that after making her disclosures to D and Strawn, B told her mother about the *393 incident. According to the mother's testimony, B told her that defendant had touched her by the "buttocks" and "crotch," and that B responded by kicking him and leaving the room. B's mother told B to let her know if it happened again, but she did not confront defendant or otherwise disclose the incident.
The incident came to the attention of police in July 2013 when the Department of Human Services (DHS) informed Detective Webb that a parent had overheard a conversation between the parent's child and the child's friend, in which the friend said that B said defendant had touched her. The parent interpreted the account as a description of child sexual abuse and made a report to DHS. Webb testified that he interviewed B, who made statements incriminating defendant. B was later interviewed at a child abuse assessment center by a forensic interviewer, Hasbrouck, who also testified at trial. Hasbrouck testified that B described defendant's touching her "crotch" and "butt," and that B also said she had reported the incident to D, Strawn, and her own mother shortly after it occurred.
Defendant's theory at trial was that the abuse never occurred and that B had fabricated the allegations. In support of that theory, defendant's closing argument emphasized what he called "astounding" discrepancies between B's accounts of the incident in her various disclosures. Importantly for purposes of this appeal, defendant also attempted to establish that neither Strawn nor B's mother believed B's disclosures. In cross-examination of both witnesses, defendant highlighted their failures to report the incident to authorities, suggesting that those failures reflected their opinions that B was not credible. In closing argument, defendant argued that Strawn had failed to act because she did not believe B:
"[I]s it reasonable to believe that, if [Strawn] really believed [B], that she's going to sit on this information, that she's not going to walk in to [the law office where Strawn worked] and say 'god, I got a tough situation here, I got this sweet kid and she's telling me this sex abuse happened. And I just want to help her and I don't want there to be repercussions. So what do we do? Do we go to the police first or DHS?'
*394 "Is it reasonable to believe that [Strawn], with her background, is just going to sit on this information if she really believed it? Or. isn't it obvious that [Strawn] had some real doubts about the story, about the likelihood of this having happened, about the manner in which this is described, and so she doesn't go to her trusted employer or anyone else to discuss this."
Defendant made a similar point as to B's mother, arguing that she would have said something to someone if she believed B's account.
The trial court convicted defendant and sentenced him to the mandatory prison term of 75 months under ORS 137.700.
On appeal, in his first assignment of error, defendant argues that the trial court erred in not striking Strawn's testimony on direct examination that she "totally believed" B's disclosure. Defendant concedes that he did not preserve that error by objecting below, but argues that the trial court's failure to sua sponte strike that portion of Strawn's testimony is plain error. See State v. Brown , 310 Or. 347, 355, 800 P.2d 259 (1990) (explaining that, under ORAP 5.45(1), we may review unpreserved error as plain error if (1) the error is "one 'of law,' " (2) the error is "obvious, not reasonably in dispute," and (3) the error "appears 'on the face of the record,' " such that the court need not "go outside the record or choose between competing inferences to find" the error, "and the facts that comprise the error are irrefutable").
The state acknowledges that Strawn's testimony constituted impermissible "vouching,"
*350 but argues that the trial court did not commit plain error because (1) the record supports a plausible inference that defendant chose not to object to Strawn's testimony for strategic reasons, and (2) if that is true, then the trial court did not "err" by declining to intervene in the parties' litigation. See State v. Corkill , 262 Or.App. 543, 551, 325 P.3d 796, rev. den. , 355 Or. 751, 331 P.3d 1010 (2014) (reasoning that, if a "claimed 'plain error' is associated with a trial court not having sua sponte interrupted a line of questioning (or not having excluded the resulting evidence sua sponte )," then the error must not only result in the *395 admission of testimony that would have been "inadmissible if they had been objected to," but must also "relate to the trial court having not taken affirmative steps to intervene in the parties' litigation").
At the outset, the state's concession that Strawn's testimony constituted impermissible "vouching" is well-taken; there is no doubt that Strawn was directly expressing an opinion about B's credibility. See State v. Chandler , 360 Or. 323, 330, 380 P.3d 932 (2016) ("This court has long held that one witness may not comment on the credibility of another witness."). It is also true that, in some instances, the trial court has an obligation to intervene sua sponte and strike vouching testimony even if a party fails to object, and that the trial court's failure to take such steps can be plain error. See, e.g. , State v. Pergande , 270 Or.App. 280, 284-85, 348 P.3d 245 (2015) (trial court plainly erred by failing to strike sua sponte a social worker's testimony that child complainants did not show signs of being coached when they described alleged abuse); State v. Higgins , 258 Or.App. 177, 180-81, 308 P.3d 352 (2013), rev. den. , 354 Or. 700, 319 P.3d 697 (2014) (trial court plainly erred by not striking sua sponte a witness's testimony that her daughter, the complainant, "wasn't lying").
As the state points out, however, a trial court does not commit plain error by failing to sua sponte strike vouching testimony if the record supports a plausible inference that the defendant may have made a strategic choice not to object to that testimony. See, e.g. , State v. Vage , 278 Or.App. 771, 777, 379 P.3d 645, rev. den. , 360 Or. 697, 388 P.3d 711 (2016) ("It is well established that an 'error does not qualify as plain error if the record contains a competing inference that the party may have had a strategic purpose for not objecting,' and that competing inference is plausible.").
That is the case here. As noted, a central part of defendant's strategy was to cast doubt on whether Strawn and B's mother believed B's disclosures of abuse. That was a theme during defendant's cross-examination of both witnesses as well as his closing argument. In that light, it is at least plausible that defendant made a strategic choice not to object to Strawn's testimony on direct examination that she "believed" B, precisely because defendant intended to *396 place that "belief" in issue himself by suggesting reasons to doubt it. If defendant's counsel intended to "open the door" to an inquiry into whether Strawn believed B, he may have expected that the prosecution would have been permitted to respond by eliciting Strawn's vouching testimony on re-direct examination, making an objection pointless. See, e.g. , State v. Miranda , 309 Or. 121, 128, 786 P.2d 155, cert. den. , 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 171 (1990) ("A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination relating to those same statements."); State v. Caulder , 75 Or.App. 457, 460-61, 706 P.2d 1007, rev. den. , 300 Or. 451, 712 P.2d 110 (1985) (reasoning that, where "[d]efense counsel's cross-examination raised the issue of * * * veracity," the trial court did not err in later denying defendant's motion to strike certain testimony asserted to be vouching, because " '[h]aving opened the door, defendant cannot be heard to complain because the prosecution stepped through.' ") (quoting State v. Barger , 43 Or.App. 659, 664, 603 P.2d 1240 (1979) ).
The fact that the "vouching" by Strawn was a passing comment from a lay witness-the mother of B's friend-rather than an expert is a further reason why defendant may have concluded that there was little to be gained by an objection, particularly where defendant intended to make an issue of whether Strawn believed B's story. In *351 State v. Hanson , 280 Or.App. 196, 203-04, 380 P.3d 1136, rev. den. , 360 Or. 751, 388 P.3d 717 (2016), the defendant similarly argued that the trial court had plainly erred in not striking sua sponte the witness's testimony that her daughter, the victim, "never lies" and is a "very truthful child." Id. We reasoned that under the circumstances, which included (among others) that the testimony was "from the victim's mother rather than being the 'kind of expert vouching testimony' that most often has prompted us to conclude that the trial court plainly should have stricken the testimony sua sponte ," and where the testimony was also "intentionally brought up and used by defendant on cross-examination," it was "plausible that defendant may have concluded that there was little to gain by objecting to the testimony, and that defendant had a strategic reason not to do so." Id. at 204, 380 P.3d 1136 (quoting State v. Inman , 275 Or.App. 920, 932, 366 P.3d 721 (2015), rev. den. , 359 Or. 525, 379 P.3d 518 (2016) ). *397 In short, because the record supports a plausible inference that defendant made a conscious choice not to object to Strawn's comment, we conclude that the trial court did not plainly err in declining to sua sponte strike that testimony.
Finally, even if we concluded that the trial court committed plain error, we would not exercise discretion to correct that error under these circumstances. See Ailes v. Portland Meadows, Inc. , 312 Or. 376, 382, 382 n. 6, 823 P.2d 956 (1991) (even where the reviewing court identifies an error that is plain, the court "must exercise its discretion to consider or not to consider the error"). Relevant factors under Ailes include
"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way * * *."
312 Or. at 382 n. 6, 823 P.2d 956.
Although Strawn's comment does constitute vouching, our case law has recognized that not all species of vouching are equally dangerous. In Hanson , as noted above, it was material to our analysis that the witness was the victim's mother, not an expert. See also Inman , 275 Or.App. at 933, 366 P.3d 721 (describing risk that "even a single vouching statement by a witness * * * with years of experience and training in the field of child abuse prevention, can be given considerable weight by the jury" (internal quotation marks omitted)).[1]
This case does not involve vouching by an expert. Defendant has not made a persuasive case that, in this bench trial, the trial court was likely to be unduly swayed in its role as fact-finder by a lay witness's passing statement that she "believed" a child complainant, particularly given defendant's extensive argument placing that belief into question. Accordingly, we conclude that any error was not *398 grave enough to warrant the exercise of our discretion under Ailes .
Affirmed.

The fact that Strawn was a lay witness is what differentiates this case from most of those cited by the dissent. See, e.g. , State v. Almanza-Garcia , 242 Or.App. 350, 351, 255 P.3d 613 (2011).