No. 713          August 6, 2025          509

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NICHOLE DANIELLE CURTIS,
aka Nichole Danielle Warfield,
*Defendant-Appellant.*

Deschutes County Circuit Court
21CR41356; A179710

On remand from the Oregon Supreme Court, *State v. Curtis*, 372 Or 812 (2024).

Raymond D. Crutchley, Judge.

Submitted on remand November 19, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Nora Coon, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

This case is before us on remand from the Supreme Court, which vacated our prior decision, *State v. Curtis*, 333 Or App 527 (nonprecedential memorandum opinion), *vac'd and rem'd*, 372 Or 812 (2024) (*Curtis I*), in light of *State v. Ortiz*, 372 Or 658, 554 P3d 796 (2024). In *Curtis I*, we concluded that the trial court plainly erred in admitting testimony that a specific score on two field sobriety tests (FSTs) indicated intoxication and that defendant's score was above that specific score, because that testimony was "scientific evidence" for which the state had failed to lay a proper foundation, and we exercised our discretion to correct the error. 333 Or App at 528. We therefore reversed and remanded. *Id*.

The issue before us on remand is whether, in light of the Supreme Court's decision in *Ortiz*, we properly exercised our discretion under *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991), to correct the error. We conclude that our exercise of discretion in *Curtis I* was correct. Accordingly, we again reverse and remand.

We recite a summary of the facts as set forth in *Curtis I* with additional facts relevant to our exercise of discretion. Police sergeant Emerson was on patrol and noticed a car that was missing its front hood and front license plate. Emerson observed defendant "moving around frantically in the vehicle" and then turning left in a "rapid jerky movement" while "accelerat[ing] much faster than the other vehicles completing the turn." Emerson activated his overhead lights, and defendant pulled into a McDonald's parking lot. Defendant parked appropriately between the two lines of a parking space.

Emerson asked defendant for her license, registration, and insurance. While looking for her documents, defendant went to the same red purse "three total times" and "was very concerned with something in that purse." Defendant was "talking very rapidly," her "hands were fidgety," she was "clenching her jaw," and "her eyes were very sensitive to the sun." Based on those observations, Emerson suspected that defendant was under the influence of methamphetamine. Emerson asked defendant if she had used methamphetamine, and she said she had used it a month

earlier and that she had used marijuana earlier in the day. Later in the encounter, defendant told Emerson that she had used methamphetamine "the night before."

Emerson asked defendant to perform field sobriety tests, including the walk-and-turn and one-leg-stand tests, and defendant consented. Emerson testified that FSTs are "nationwide" "standardized tests" developed by the National Highway Traffic Safety Administration that assess an individual's sobriety. Emerson considers a particular number of "clues" on each FST, eight for the walk-and-turn test and four for the one-leg-stand test. He explained that, for both tests, the presence of two of the clues would indicate impairment. Emerson observed five clues on the walk-and-turn test: Defendant was not able to keep her balance; raised her arms; started too soon; stepped off line; and missed a heel-to-toe. Emerson observed two clues on the one-leg-stand test: Defendant swayed while balancing and raised her arms for balance.

After Emerson arrested defendant for DUII, defendant provided a urine sample, which revealed the presence of methamphetamine and its metabolite. At trial, a forensic scientist testified that "a urine sample doesn't say when the person last used" or "if there was any sort of impairment" at the time of driving.

## ANALYSIS

As discussed above, in *Curtis I*, we concluded that the trial court plainly erred in failing to strike Emerson's testimony that the walk-and-turn test and the one-leg-stand test are standardized national tests, that a person exhibiting at least two "clues" on either test indicates that they are intoxicated, and that defendant exhibited two or more clues on each test. 333 Or App at 529. We further concluded that the error was not harmless and, "for the reasons we described in *Ortiz* and *Reid*," we exercised our discretion to correct the error. *Id*. at 530. On remand, our task is to address whether that exercise of discretion was proper.

In deciding whether to exercise our discretion to correct a plain error, we consider factors such as "the competing interests of the parties; the nature of the case; the gravity of

the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served[.]" *Ailes*, 312 Or at 382 n 6. The Supreme Court has "frequently warned that the decision to reverse based on plain error should be made with utmost caution because it is contrary to the strong policies requiring preservation and raising of error." *Ortiz*, 372 Or at 666 (internal quotation marks omitted).

The Supreme Court has also explained that "reversing based solely on a conclusion that a plain error was not harmless is inconsistent" with case law. *Id.* at 670-71. However, the likelihood that an error affected the verdict goes to its gravity and to the ends of justice, and "our assessment of where [the error] falls on the spectrum of 'likelihood' of having affected the verdict can be an important consideration to the exercise of discretion." *State v. Horton*, 327 Or App 256, 264, 535 P3d 338 (2023).

*State v. Hall*, 336 Or App 812, 823-25, 562 P3d 284 (2024), *rev den*, 373 Or 712 (2025), illustrates those principles. There, we concluded that the trial court plainly erred in admitting scientific testimony similar to the testimony at issue here, where a proper foundation had not been laid, and we exercised our discretion to correct the error primarily because the officer's testimony "likely had a significant influence on the jury's decision to convict" the defendant of DUII. *Hall*, 336 Or App at 825. In that case, the officer stopped the defendant because his temporary registration was not displayed correctly; the defendant had bloodshot, watery eyes; the defendant denied that he had been drinking; his BAC was well below the legal limit; a test indicating the presence of marijuana and methamphetamine in the defendant's system did not indicate how recently the defendant had used those substances before driving; and, based on the body cam footage, the jury "would not necessarily have viewed [the] defendant's performance on the walk-and-turn test *** as particularly bad." *Id.* at 823-24. Based on those circumstances, where "the other evidence of impaired driving *** was not strong," we concluded that "the officer's testimony *** likely had a significant impact on the jury's

verdict * * * [and] the error in admitting that testimony was sufficiently grave such that the ends of justice support reversal." *Id*. at 824; *see State v. Inman*, 275 Or App 920, 933-34, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016) (whether the record includes additional evidence of a defendant's guilt is a factor that we have considered in declining to exercise our discretion to correct plain error).

Here, similar to *Hall*, the gravity of the error weighs in favor of exercising our discretion because the likelihood that the error affected the verdict is high. Apart from Emerson's testimony about defendant's performance on the FSTs, evidence of defendant's impairment was weak. Emerson briefly observed defendant make a "jerky" left-hand turn and accelerate faster than other drivers, but he did not observe any moving violations. *Cf. State v. Mello*, 332 Or App 215, 222-23, 549 P3d 42, *rev den*, 372 Or 763 (2024) (declining to exercise our discretion to correct plain error in admitting scientific testimony about FSTs in part because officer observed the defendant's poor driving for nearly nine miles).

In addition, defendant denied using methamphetamine that day, and although the urinalysis indicated the presence of methamphetamine in defendant's system, a forensic scientist testified that defendant's "urine sample doesn't say when the person last used" or "if there was any sort of impairment" at the time she was driving. Further, we have reviewed the bodycam footage of the stop, which was admitted at trial, and we conclude that a lay juror would not necessarily have perceived defendant's performance on the FSTs as strong evidence of impairment.

In the context of that evidence, Emerson's scientific testimony regarding the FSTs likely had a significant impact on the jury's verdict. Thus, the error in admitting that testimony was sufficiently grave such that the ends of justice support exercising our discretion to correct the error.

An additional factor that we may consider in exercising our discretion to correct a plain error is "the possibility that defendant made a strategic choice not to object * * *." *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007). Here, there is no indication, based on defendant's arguments and questions on

cross-examination, that defendant had a strategic reason not to object to Emerson's scientific testimony regarding the FSTs. *Cf. Mello*, 332 Or App at 223 (the defendant may have had a strategic reason for failing to object to the scientific testimony about FSTs where the defendant argued during closing argument that the FSTs "'were not done scientifically'"); *see Hall*, 336 Or App at 825 n 9 (exercising our discretion to correct a plain error in part because we could not "discern a strategic reason for the failure to object"). Thus, that factor weighs in favor of exercising our discretion to correct the error.

The state argues that the policies of preservation, including the ease with which the error could have been avoided or corrected and avoiding unnecessarily repetitive legal proceedings weigh against our exercise of discretion to correct the error. *See Inman*, 275 Or App at 935 (the judicial system's interests in requiring preservation are "weighty," and "the ease with which any error could have been avoided or corrected should be a significant factor in an appellate court's decision whether to exercise its discretion to correct a plain, but unpreserved, error"). The state argues that if defendant had objected, the trial court could have easily corrected the error by striking the testimony and instructing the jury to disregard it and, thereby, avoided unnecessarily repetitive legal proceedings.

Although we agree that those factors weigh against exercising our discretion, on balance we conclude that the gravity of the error and the ends of justice support reversal and distinguish this case from those in which we have declined to exercise our discretion. *See id.* at 936 (concluding that the ends of justice do not weigh in favor of reversal in part because the error "was not particularly grave"); *Horton*, 327 Or App at 266 (declining to exercise our discretion to correct a plain error where "even though there is some likelihood that the verdict would have been different (such that the error was not legally harmless), it is an extremely low likelihood").

Thus, consistent with cases such as *Hall*, we exercise our discretion to correct the trial court's plain error in admitting scientific testimony regarding FSTs for which the state had not laid a proper foundation.

Reversed and remanded.