No. 758 August 27, 2025 37

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEPHANIE ANDREA ORTIZ,
*Defendant-Appellant.*

Josephine County Circuit Court
20CR23850; A175738

On remand from the Oregon Supreme Court, *State v. Ortiz*, 372 Or 658, 554 P3d 796 (2024).

Brandon S. Thueson, Judge.

Submitted on remand September 18, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Peter G. Klym, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the answering brief for respondent. On the supplemental brief was Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General.

Before Shorr, Presiding Judge, Pagán, Judge, and O'Connor, Judge.*

SHORR, P. J.

Reversed and remanded.

Pagán, J., dissenting.

_____

* O'Connor, Judge *vice* Mooney, Senior Judge.

**SHORR, P. J.**

This case is before us on remand from the Oregon Supreme Court. *State v. Ortiz*, 372 Or 658, 554 P3d 796 (2024) (*Ortiz II*). Defendant initially appealed following her conviction for driving under the influence of intoxicants (DUII), ORS 813.010(4), and we reversed and remanded based on her second assignment of error. *State v. Ortiz*, 325 Or App 134, 135, 528 P3d 795 (2023), *rev'd*, 372 Or 658, 554 P3d 796 (2024) (*Ortiz I*). In her second assignment of error, she contended that the trial court plainly erred in admitting a police officer's testimony that the field sobriety tests (FSTs) that the officer had administered were scientifically validated.[1] In our prior opinion, we concluded that Officer Miguel had presented scientific evidence when she testified that the FSTs were "standardized" tests that are "designed to determine impairment" and, more significantly to us, had been "supported by studies proving their validity." *Id*. at 138-39. We concluded that the trial court had plainly erred in admitting that testimony without a proper foundation, and we then exercised our discretion to correct that plain error. *Id*. at 140-41. As a result, we reversed the trial court's judgment and remanded.[2]

The Supreme Court took review. That court did not reach the merits or decide whether any alleged error was plain. It acknowledged that "it is possible that a jury could have understood from the terminology that Miguel used in describing the FSTs that they were sufficiently grounded in science to require an additional foundational showing, as the Court of Appeals concluded." *Ortiz II*, 372 Or at 669-70. Instead, it concluded that we had erred in misapplying the factors for exercising our discretion to decide the plain-error issue. *Id*. at 671.[3] It remanded to us to determine again

---

[1] As the Supreme Court noted, the FSTs at issue here were the walk-and-turn test and the one-leg-stand test. *Ortiz II*, 372 Or at 660 n 1. Those tests are described in OAR 257-025-0020(1)(b) and (c).

[2] As a result of our reversal on the second assignment of error, we did not reach defendant's first assignment of error in which she contended that the trial court had erred in admitting the officer's testimony that a certain number of clues on the walk-and-turn test was consistent with other indicators of impairment and inconsistent with being sober. *Ortiz I*, 325 Or App at 142.

[3] Justice James, joined by two other justices, concluded that the particular terms used by the officer "unquestionably invoke the aura of scientific grounding"

whether we should exercise discretion. *Id*. at 678. We now do so, and again conclude that we should exercise our discretion to correct what we perceive as plain error under our existing case law.

Our plain-error analysis involves the consideration of separate tests, and the satisfaction of each test is necessary to reverse on the basis of plain error. We first decide whether the error is plain. If it is, we next determine whether the error is not harmless. If both of those tests are met, we only then proceed to decide whether to exercise our discretion to correct the plain and not harmless error. *See State v. Horton*, 327 Or App 256, 261-64, 535 P3d 338 (2023) (describing and following each of those steps).

The Supreme Court did not reverse our prior conclusion that the error was plain. We, therefore, do not discuss that issue again in detail. An error is plain if it is "(1) one of law, (2) obvious and not reasonably in dispute, and (3) apparent on the record without requiring the court to choose among competing inferences." *Ortiz II*, 372 Or at 664 (internal quotation marks omitted). The issue here, whether testimony is presented as scientific evidence and requires an appropriate foundation for admission, is an issue of law. *State v. Eatinger*, 298 Or App 630, 639, 448 P3d 636 (2019). We considered the error to be obvious because we did not see a meaningful difference between the testimony in this case and our prior case law where we held that similar testimony presented scientific evidence. *Ortiz I*, 325 Or App at 139-40. *See, e.g.*, *State v. Reid*, 312 Or App 540, 543, 942 P3d 728 (2021) (holding that it was plain error to admit officer's testimony that the FSTs were "pass or fail" without proper foundation because it would likely be perceived by the jury as an objective scientific test and evidence); *Eatinger*, 298 Or App at 642-43 (holding in a preserved context that the officer's testimony that FSTs were scientifically validated and "the product of scientific research" was scientific evidence);

---

and would be understood by a jury as based on principles of science. 372 Or at 682 (James, J., concurring). That group concluded that "[i]n light of our decisions, as well as the Court of Appeals' decisions discussed, that error was plain, obvious, apparent on the record, and not reasonably in dispute." *Id*. That part of the opinion was a concurrence, however, because the court was unanimous in its conclusion that we had erred in exercising our discretion.

*State v. Beltran-Chavez*, 286 Or App 590, 614, 400 P3d 927 (2017) (holding in a preserved context that an officer's testimony that the defendant had "failed" the walk-and-turn or one-leg-stand test was scientific because the jury would perceive that evidence as scientific, objective, and based on a numerical scoring system). The issue is also apparent on the record without the need to consider competing inferences as it was presented in testimony before the court.

We turn to whether the error was harmless. Again, the Supreme Court did not reverse our conclusion that the error was not harmless—although it did fault us for considering a harmless standard during the final plain-error step, whether to exercise discretion, which we discuss further below. As a result, we similarly do not discuss harmlessness in detail other than to note, as we did before and as we discuss further below, that this was a close case in some respects. We cannot say that the improper admission of testimony describing the FSTs as "standardized tests" that are "designed to determine impairment" and supported by "studies conducted to prove their validity"—when combined with the officer's testimony that defendant exhibited multiple clues of impairment on those tests—had little likelihood of affecting the verdict. *See State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003) (stating that an error is harmless for the purpose of Article VII (Amended), section 3, of the Oregon Constitution if "there was little likelihood that the error affected the jury's verdict").

We therefore turn to whether we should exercise our discretion to correct the plain error—the issue upon which the Supreme Court reversed and remanded to us after concluding that we had improperly applied the test for exercising discretion. We pause, however, to note what we at least intended, if we did not adequately convey, in our prior opinion. The Supreme Court faulted us for comingling the "harmless error" test, addressed separately above, with our decision on whether to exercise discretion. That criticism is fair. The court, however, further concluded that our decision that the error "'was not harmless' *** is not a legally sufficient reason to reverse on plain-error review." *Ortiz II*, 372

Or at 671.[4] In its analysis, the court treated our decision on harmless error as the *sole* basis upon which we exercised discretion to correct the plain error in this case. But the initially stated and primary basis for our decision, if stated briefly, is that we had exercised our discretion to correct similar plain error in *Reid*. We stated, "[f]urther, as we did in *Reid*, we also exercise our discretion to correct the error." 325 Or App at 140. That is, we were relying on precedent and applying the same underlying rationale in exercising discretion in this case because we had exercised discretion in what we perceived to be similar circumstances before.

We reiterate that rationale as a primary basis for our exercise of discretion here. Indeed, since *Reid* and the issuance of the Supreme Court's and our initial opinions in *Ortiz I*, we have again exercised our discretion to correct plain error regarding the admission of an officer's scientific testimony surrounding FSTs.[5] *See State v. Curtis*, 342 Or App 509, 513, ___ P3d ____ (2025) (exercising discretion in part because the officer's testimony that the FSTs were standardized national tests and that two clues would indicate impairment was a grave error where the evidence of impaired driving was "weak"); *State v. Hall*, 336 Or App 812, 825, 562 P3d 284 (2024), *rev den*, 373 Or 712 (2025) (exercising discretion to correct plain error where the court admitted without adequate foundation an officer's testimony that the presence of a certain number of clues on the

---

[4] The court later noted that "we have never stated that the Court of Appeals, exercising its discretion on plain-error review, may reverse based solely on its determination that an error is not harmless under the constitutional standard." *Ortiz II*, 372 Or at 674-75.

[5] Judge Pagán contends that we should rely on the existing case law only in determining whether there was plain error and not in exercising discretion. ___ Or App ___ (Pagán, J., dissenting) (slip op at 2). As we discuss below, we cite to the case law as precedent because we are relying on those cases for their exercise of discretion in what we believe to be similar circumstances that exist here. We have regularly exercised our discretion to correct plain error based on our reliance on cases in which where we have previously exercised discretion in similar circumstances. *See State v. Velasquez-Orozco*, 285 Or App 881, 883, 398 P3d 501, *rev den*, 361 Or 801 (2017) (exercising discretion to correct plain error where we had previously done so "for similar reasons" and "under similar circumstances"); *State v. Sanders*, 285 Or App 878, 880, 399 P3d 487, *rev den*, 361 Or 803 (2017) (same); *State v. Wright*, 281 Or App 399, 406, 383 P3d 385 (2016) (same); *State v. Fleet*, 270 Or App 246, 247, 347 P3d 345 (2015) (same); *State v. Chavez*, 263 Or App 187, 188-89, 326 P3d 629, *rev den*, 356 Or 163 (2014) (same). The Supreme Court has not instructed us to do otherwise.

walk-and-turn and one-leg-stand tests indicated impairment); *but see State v. Redman*, 338 Or App 384, 395-98, 566 P3d 5 (2025) (concluding that the trial court plainly erred in admitting the officer's testimony that two or more clues on the FSTs indicate intoxication but not exercising discretion because the defendant might have had strategic reasons for not objecting, there was a low likelihood that the error affected the verdict, and the trial court could have easily corrected the error had it been alerted). Of course, each case has a different record to be considered that may affect our exercise of discretion, but our past exercise of discretion in what we consider to be similar cases is precedent for our exercise of discretion here. If we previously concluded that we should exercise our discretion to correct plain error in what we perceive as similar circumstances, it might raise issues about fairness, *ad hoc* application of our principles, and the value and consistency of our precedent if we did not continue to do so absent other circumstances militating against taking review.

Nevertheless, we also turn to some of the factors bearing on our exercise of discretion as unique circumstances in cases that might persuade us not to follow our prior path. The Supreme Court has identified the following nonexclusive list of factors that we may consider in deciding whether to exercise our discretion to correct plain error:

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). Applying those factors, we believe that the competing interests of the parties, the nature of the case, the gravity of the error, and the ends of justice favor our exercise of discretion here. Defendant has a strong interest in ensuring that she is not convicted of a crime based, in part, on inadmissible scientific evidence for which no foundation is laid. On the other hand, when testimony is

scientific, the state may proceed so long as it lays a proper foundation for the testimony.[6] *See Beltran-Chavez*, 286 Or App at 616 (noting that a conclusion that evidence is scientific only requires that the state lay an adequate foundation for it to be admissible).

Relatedly, we have previously concluded that "scientific evidence has manifest potential to influence the jury."[7] *Id*. at 617. Because of that persuasive force and its manifest potential to influence the factfinder, it is important to ensure that it is not admitted without a proper foundation. *See State v. Brown*, 297 Or 404, 440, 687 P2d 751 (1984) (stating that scientific evidence may possibly "assume a posture of mythic infallibility in the eyes of a jury of lay[persons]" (internal quotation marks omitted)). Although the particular scientific testimony in this case was not a focus of the trial or of closing arguments, it is highly persuasive evidence that can easily influence a jury. Here, it imbued the officer's testimony that defendant had exhibited multiple clues of impairment with the imprimatur of science.

We conclude that the erroneous admission of the testimony had a significant potential to affect the jury's verdict, making the error grave and affecting the ends of justice. *See State v. Mello*, 332 Or App 215, 222, 549 P3d 42, *rev den*, 372 Or 763 (2024) (stating that the likelihood that an error affected the verdict goes to its gravity and to the ends of justice). That is both because of the inherently persuasive force of scientific evidence that is backed by "studies conducted to prove their validity" and because there were aspects of this case that were close. For instance, this case was not tried as a *per se* impairment case based on defendant's blood alcohol content (BAC). But the jury was told that defendant's BAC, approximately one hour and 15 minutes after the initial 9-1-1 call, was a .07, which is under the .08 legal limit for a *per se* impairment case. *See* ORS 813.010(1)(a), (c) (.08

---

[6] We note, as we did previously, that we question in this case whether the officer could have provided that foundation based on her prior training and experience with FSTs. *Ortiz I*, 325 Or App at 142.

[7] Of course, if the Supreme Court were to conclude on the merits that the particular evidence here was not scientific or was not obviously so, which it did not say, that would both obviate the need to address the issue and call into doubt that this evidence had manifest persuasive force.

percent statutory reference point for driving under the influence of intoxicants). Further, although we acknowledge that defendant admitted to the officer that she had had five beers over the course of six and one-half hours, was "tipsy," and not in shape to drive at that moment, a jury could find that the videos of her interview at the police station and of her performing the FSTs does not show an obviously impaired person. The officer testified to defendant's possible signs of impairment and mood swings during the interview. The police bodycam video shows that defendant was upset, distracted, and speaking with others off camera. Defendant testified that she had been embarrassed to be doing the FSTs, which occurred in a residential neighborhood on Easter in front of her family. Defendant's mother, niece, and sister had driven up in a car while she was doing the FSTs.

Defendant further testified that she had been in a domestic "altercation" with her husband that day. Indeed, the initial 9-1-1 call had been from a member of the public who had been concerned for defendant's safety after the witness heard a car screech, saw it stop at an odd angle in her neighbor's driveway, and then observed a man yank a woman (later believed to be defendant) out of the car.[8] There was not a 9-1-1 complaint of drunken or impaired driving. There were a number of nonalcohol-related factors that a factfinder could find affected defendant's responses to the interview and tests.

Judge Pagán accurately points out in his dissent that defendant denied driving that day. It is inaccurate, however, to state that her only theory was that she had not been driving or that she did not contest impairment to the jury. As observed in our prior opinion, defense counsel argued in closing that the jurors could find defendant not guilty either because they had reasonable doubt that she had been driving or, if they found she had been driving, because they had reasonable doubt that she had been under the influence of intoxicating liquor. *Ortiz I*, 325 Or App at 136. Of course, as the defense emphasized in closing, the state had to prove both.

---

[8] Based on that evidence, defendant argued in closing that her behavior and conduct during the interview was attributable to being assaulted earlier by her domestic partner.

We acknowledge that the error did not come to the court's attention and that the policies behind the general rule requiring preservation of error have not been served in another way. *Ailes*, 312 Or at 382 n 6. That factor, however, is often true in plain-error cases where no party objected to the admission of evidence, including in *Reid* where we exercised discretion despite the fact that the defendant had earlier objected to one portion of the testimony but later failed to object to the particular scientific evidence at issue. *Reid*, 312 Or App at 543-44. Further, as the Supreme Court concurrence noted in this case, trial courts serve a special gatekeeping function when it comes to scientific evidence, which requires that they ensure that "valid science and *only* valid science that is relevant and helpful to the jury, enters the courtroom." *Ortiz II*, 372 Or at 689 (James, J., concurring) (emphasis in original). The trial court's "obligation to gatekeep the admission of scientific evidence in Oregon" is a counterbalance to the general rule that favors the principles of preservation and presents a unique circumstance that is not present in nonscientific evidence cases. *Id*. at 688-89.

We also do not perceive that defendant had any strategic reason not to object to the evidence. *See Mello*, 332 Or App at 223 (noting that "the possibility that [the] defendant made a strategic choice not to object" is a factor that we may consider in deciding whether to exercise our discretion to correct a plain error) (citing *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007)); *Redman*, 338 Or App at 395-96 (declining to exercise discretion, in part, because the defendant might have had a strategic reason not to object to the trooper's testimony about the defendant's score on the walk-and-turn and one-leg-stand tests).

Applying both our precedent and the relevant *Ailes* factors, we again exercise our discretion to correct the plain error here. We do so despite our understanding that the exercise of discretion should be made with "utmost caution," *Ailes*, 312 Or 382, and should be "'rare and exceptional,'" *State v. Gornick*, 340 Or 160, 166, 130 P3d 780 (2006) (quoting *Hotelling v. Walther*, 174 Or 381, 385, 148 P2d 933 (1944)). As noted, we do so in part because we have previously exercised discretion in similar circumstances, and the application of

the *Ailes* factors to the circumstances here do not suggest a different result.

We appreciate that Judge Pagán would not exercise discretion. That is a reasonable choice. But we believe it is equally reasonable and a permissible exercise of our discretion to permit correction of the plain error in this case.

In sum, we conclude, as we did before, that the trial court plainly erred in admitting the scientific evidence in this case without requiring the state to lay a foundation. Following the remand from the Supreme Court that instructed us to consider anew whether we would exercise discretion based on a proper application of *Ailes*, we again conclude that we should exercise our discretion. As a result, we again reverse on defendant's second assignment of error.[1]

Reversed and remanded.

**PAGÁN, J.,** dissenting.

"[I]t is only in rare and exceptional cases that an appellate court should reverse based on an error that had not been raised in the trial court." *State v. Ortiz*, 372 Or 658, 665, 554 P3d 796 (2024) (*Ortiz II*) (internal quotation marks omitted). I believe the majority is misreading *Ortiz II*, which emphasized the cautious and deliberate disposition our court should have in the face of unpreserved assignments of error. The Supreme Court's unanimous majority, in my view, emphasized the articulation aspect of the second step in *Ailes v. Portland Meadows, Inc.,* 312 Or 376, 823 P2d 956 (1991), to highlight how such an articulation would be the natural consequence of a deliberate approach concerned with the policies underlying preservation. Emphasizing two cases, *Inman* and *Horton*,[2] where error was plain but we declined to exercise plain error discretion—including in a vouching case—the Supreme Court could not have a sent a stronger message.

In response, the majority again cites *State v. Reid*, 312 Or App 540, 492 P3d 728 (2021), in what appears to be its second step of the *Ailes* analysis, as support to justify its

---

[1] As before, we do not need to reach defendant's first assignment of error. *Ortiz I*, 325 Or App at 142.

[2] *State v. Inman*, 275 Or App 920, 366 P2d 721 (2015); *State v. Horton*, 372 Or App 256, 535 P3d 338 (2023).

decision to exercise discretion *in this case*. ___ Or App at ___
(slip op at 5). But that only compounds the error the Supreme
Court identified. First, to the extent that the majority in
this case intends to use precedent as a jurisprudential addi-
tional consideration in the second step of the *Ailes* analysis,
I think the majority is undercutting our preservation pol-
icies while also misplacing the use of precedent for plain
error cases. It undercuts our policies because it obviates the
need in future cases to object to an entire swath of evidence,
regardless of the merits of any objections or the particulars
of the cases, once we have reversed on similar grounds. To
the extent that precedent has a place in plain error analysis,
it should be for determining whether there was error in the
first instance and whether it was plain. But beyond that,
*Ortiz II* directs us to weigh the particulars of the case before
us.[3] *See Ortiz II*, 372 Or at 673 ("[T]he rule against consider-
ing unpreserved errors will not be relaxed unless the court,
upon an examination of the entire record, can say that the
error is manifest and that the ends of justice will not be
otherwise satisfied." (internal quotation marks omitted)).

Defendant also argued, in their brief to the Supreme
Court on review, that the reliance on *Reid* and precedent
generally was appropriate, largely echoing the sentiments
the majority use today. But *Ortiz II* did not discuss *Reid* or
discuss the use of precedent in the way that the majority
suggests. I read that to conclude that the Supreme Court
has rejected that argument and the use of precedent as such
a foundation for exercising discretion after we have found
an error to be plain. Such an inference makes sense when
considering how much emphasis the Supreme Court made
of being able to articulate—in each case—how the ends of
justice justify reversing.

If I were to follow *Ortiz II* as I read it, I would not
reach the issue of whether this testimony was scientific
because, considering the theories of the parties and the evi-
dence against defendant, the testimony was harmless as it

---

[3] As an aside, *Reid* is also inapt for such use because it involved a concession
by the state not only as to the error, but as to whether the court should exercise
its discretion, effectively removing any articulation of a critical analysis of the
particulars of the case from consideration on appeal. 312 Or App at 544.

had little likelihood of affecting the verdict.[4] *See Inman*, 275 Or App at 929-30 ("In determining whether any error was grave, we consider the likelihood that the error affected the outcome of the proceeding below.").

Even if it was not harmless, I would not exercise discretion to correct the error. The majority argues that the evidence at issue here—an officer testifying that the tests she was trained to perform are nationally standardized and subject to tests to measure their validity—was highly consequential because the evidence of defendant's impairment was not so overwhelming, and the jury would have had to consider the field sobriety tests (FSTs) in their determination. But the majority ignores the defendant's own theory when weighing the gravity of the error. Defendant's narrative was not that she had not been drinking, or even that she was not impaired; her theory was that she had not been driving. She admitted in a video, which included her performance on the FSTs, that she was not safe to drive. The state presented eyewitness testimony of seeing defendant drive erratically and provided footage of her interactions with law enforcement. The state emphasized the use of the FSTs in closing, but not their "nationally standardized" nature or that they were subject to testing to measure their validity. And, as noted previously, the use of the FSTs themselves was not improper, nor was the jury's viewing of the FSTs on video.[5] That is not to say that it was not error, but that even if there was error related to how the FSTs were discussed, the jury would still be able to use them in any event.[6] That leaves me to conclude that the gravity of the error is faint.

---

[4] Recently, we did not find any error to be plain when a trial court allowed an officer to testify that FSTs were "generally accepted and accurate ways to determine intoxication" and when the trooper referred to "validated" clues. *State v. Redman*, 338 Or App 384, 386, 566 P3d 5 (2025). The testimony in this case is far more similar to that testimony than to the undoubtedly scientific testimony in *Reid*.

[5] I would also note that it is inherently illogical to suggest that, in an evidence-based system such ours, we would allow jurors to hear witnesses testify to any sort of test or examination if we did not believe that the test was standardized and somehow subject to peer review and validity testing. I submit that most jurors presumed such testimony, if the officer provided it or not.

[6] Though neither party has addressed it, it is also inherently prejudicial to allow jurors to hear and see evidence relating to any sort of test without explaining to the jurors what the thresholds are for that test. In the absence of clear explanations, a juror is left to decide on their own how many "clues" equate with impairment. If the goal is to ensure that a factfinder is not presented with

I would also consider whether—if defendant had objected—-the state would have been able to provide further evidence of the officer's training, sufficient to lay a foundation for the evidence in question. *See id.* at 934 ("We also consider whether the policies behind the general rule requiring pres- ervation of error have been served in the case in another way." (Internal quotation marks omitted.)). To reiterate the specific error here: an officer testified as to the scientific nature of a test he performed *without foundation*. Notably, in defendant's supplemental briefing arguing this point, they emphasize that the officer's testimony about her training was limited and that the state had only listed two witnesses before trial. But that argument highlights the specific problem this case presents: had the state known that defendant was challenging the qualifications of the witness to discuss FSTs, they might have had an entirely different strategy below, including pre- trial preparation and bringing other experts who could have viewed the video as the jury did. We should be very cautious to accept arguments about a potential record when counsel was presented with different legal theories below. Unless the majority is extending *Reid* and other such cases to hold that an officer may *never* testify as to the scientific nature of FSTs, which is not my understanding of *State v. Eatinger*, 298 Or App 630, 448 P3d 636 (2019),[7] then we must acknowl- edge that the record here does not clearly show that the state would not have been able to present a proper foundation for the testimony had an objection been made.

Further, defendant might have had a strategic rea- son not to object. *See State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007) (in considering whether to exercise discre- tion to correct plain error, we may consider the possibility that the defendant had a strategic reason not to object). As noted, defendant's theory was that she was not driving. If defendant was focusing on her narrative about whether the state could prove she was driving, it is reasonable for coun- sel to want to downplay or avoid evidence about impairment

___

evidence that may be used improperly, the solution offered by the majority is more harmful than helpful.

   [7]  *Eatinger* made note of the various ways an officer *could* have qualified their testimony about FSTs to qualify under OEC 702 and provide an opinion to the jury, such as the existence of specialized literature or other *Brown/O'Key* factors. 298 Or App at 645.

to avoid highlighting the state's strengths. In that context, knowing that an officer *could* lay the foundation for an opinion under OEC 702, which is far more damaging for a defendant than simply showing the FSTs to the jury, counsel might have wanted to avoid providing the state with a chance to unnecessarily bolster its case. Indeed, had the state offered evidence of credentials, defendant might have even stipulated to the witness being able to offer an opinion under OEC 702 to avoid qualifying the witness in front of the jury.[8]

Lastly, looking at the ends of justice, *see Inman*, 275 Or App at 936, considering that the error here was not grave because it would likely not have affected the verdict based on defendant's theory, and that the record might have been corrected had defendant objected, I would avoid an unnecessary retrial here. Just as in *Inman*, when I "consider those factors together *** along with the Supreme Court's admonition to exercise utmost caution in addressing unpreserved claims of error," I would conclude that the ends of justice would not be served by exercising discretion in this case. *Id.* (internal quotation marks omitted).

But, instead, the majority continues our court's pattern of lowering the threshold for considering and reversing on unpreserved claims of error. I would point our sails in another direction.

I end with one final suggestion for my colleagues at all levels. I balk at the idea that a trial judge has such limited options when confronted with testimony such as this. We often suggest that a trial judge may only strike the testimony, give a curative instruction, or declare a mistrial, which, in my view, detaches our appellate courts from the personal nature of trials. I would rather suggest that all trial judges simply to the following: *pause*, ask the jury to leave, and then inquire of counsel whether they intended to object, and if not, why not. Do so on the record, and, if not satisfied with counsel's answer, employ the various tools

---

[8] Compare this case with *State v. Curtis*, 342 Or App 509, ___ P3d ___ (2025), in which we exercised discretion in a similar case, but the defendant's theory was that they had not been impaired at all. In that scenario, it may easily be said to be unreasonable to fail to object to *any* potentially improper evidence the state offers about impairment.

we have to ensure that the record is clear. Had the judge done so in this case, many different outcomes are reasonable to imagine. If counsel had said they simply missed it, and yes, they intended to object, it is not unreasonable to imagine that the state could have either asked different questions or called another witness entirely, or the judge could have easily stricken the answers and given a quick curative instruction. If they replied that they had not intended to object, we likely would not be having this discussion to begin with. Going forward, we can only hope to assist trial judges by giving them guidance on what to do when such testimony is presented before them and they must react. In those instances, I would hope our jurisprudence suggests that the trial court make a full record, rather than simply select from a narrow series of options. Exercising our discretion and reversing here encourages the latter.

I would affirm, and I respectfully dissent.