No. 1138            December 31, 2025            177

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAIME RENE VANINETTI,
aka Jaime Vaninetti, aka Jamie Rene Vaninetti,
*Defendant-Appellant.*

Jackson County Circuit Court
20CR46176; A181215

Jeremy A. Markiewicz, Judge.

Submitted April 23, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Francis C. Gieringer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, filed the brief for respondent.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

Defendant appeals from a judgment of conviction, challenging her convictions for driving under the influence of intoxicants (DUII), ORS 813.010(4) (Count 1), and reckless driving, ORS 811.140 (Count 4).[1] In her first two assignments of error, defendant argues that the trial court plainly erred in failing to strike certain testimony about two field sobriety tests (FSTs) which, according to defendant, constituted scientific evidence for which the state failed to lay a foundation. For the reasons explained below, even assuming that the trial court plainly erred in allowing the testimony, we would not exercise our discretion to correct any presumed error in this case. In her remaining assignments of error, defendant argues that the trial court plainly erred in imposing certain special conditions of probation. We conclude that the trial court did not plainly err in imposing those conditions. Accordingly, we affirm.

Police apprehended defendant some distance away from a crash involving three cars and arrested her for DUII. At trial, Sergeant Jewell explained that he located a vehicle, driven by defendant, matching the description of a vehicle that had fled the crash scene. He followed the vehicle and observed defendant drive over the posted speed limit and at one point drive up onto the sidewalk, but she was not otherwise swerving. Jewell testified that he pulled her over and noticed that she "seemed kind of out of it," moved slowly, had difficulty with certain tasks like putting her car into park and removing her license from her wallet. She told him that she had been in a crash and had hit her head.

Officer Venables testified that he was also present at the traffic stop, suspected impairment, and asked defendant to undergo FSTs. He stated that he asked defendant about medical conditions prior to the tests and defendant told him that she was hypoglycemic, diabetic, and had previously broken her back and leg, but was not struggling with blood sugar issues at the time and could walk in a straight line. She denied having used any drugs or alcohol that day.

---

[1] Defendant does not challenge her convictions for unlawful possession of heroin, ORS 475.854(2)(a) (Count 2), and failing to perform the duties of a driver, ORS 811.700 (Count 3).

Defendant had a visible bruise on her forehead, but was cleared by paramedics to perform the tests.

Officer Venables testified regarding defendant's performance on the three roadside FSTs he administered: the horizontal gaze nystagmus (HGN) test, the one-leg-stand test, and the walk-and-turn test. On the HGN test, Venables testified that he observed two clues of impairment, and that four out of six clues typically indicate impairment. On the one-leg-stand test, he testified that he saw one clue out of four clues. With respect to the walk-and-turn test, which is the only one of the three at issue on appeal, the prosecutor asked:

"Q   [I]n your training and experience, how many clues out of eight indicate that someone is impaired?

"A   Two.

"* * * * *

"Q   And what did you observe?

"A   So I observed [defendant]—she stepped off instructional stance, raised her arms for balance. She stopped during the test, missed heel to toe, improperly turned, and took an improper number of steps.

"Q   Okay.

"A   So six, six altogether."

On cross-examination, defense counsel questioned Venables about the number of clues on each test that would be "considered a fail," and noted "that's two of your three tests she passed." The state objected to the use of the terms "pass or fail" for those tests. The court sustained the objection and directed defense counsel to "rephrase the terminology."

Lieutenant Pietila administered the modified Romberg test, which required defendant, among other things, to estimate the passage of 30 seconds. She testified that the modified Romberg is not a standardized test with standardized clues, but she looks for signs of impairment, including the failure to accurately note the passage of time. She testified that defendant estimated the passage of 30 seconds in 37 seconds and that an estimate of 30 seconds

that is more than five seconds off is outside the normal range, demonstrates an impaired perception of time, and "is an indicator *** of cannabis use." On cross-examination, defense counsel confirmed with Pietila that an estimate of 30 seconds that is plus or minus five seconds is considered normal and that fatigue could explain a slower than normal estimate.

Detective Osborne then testified as a drug recognition expert (DRE) and explained the 12-step protocol that he administered to defendant. As part of the protocol, he administered the same FSTs that Venables and Pietila had administered. On the HGN test, he testified that he observed no HGN. On the walk-and-turn test, he testified that he observed four indicators of impairment. On the one-leg-stand test, he testified that he observed one clue of impairment when defendant stood on her preferred leg. Osborne did not testify about how many clues indicate impairment on those tests. On the modified Romberg test, he testified that defendant estimated 30 seconds in the passage of 36 seconds. Osborne confirmed that that estimate indicates a slow internal clock, but did not identify the numerical threshold considered within the normal range. As part of the protocol, he observed a lack of convergence in defendant's eyes which is consistent with cannabis impairment. He also observed that defendant's pulse and blood pressure were normal, which is inconsistent with cannabis impairment. Other factors, such as defendant's pupil size, reaction to light, body temperature, and muscle tone were normal and consistent with both being impaired and unimpaired by cannabis. As part of the protocol, defendant provided a urine sample that tested positive for a metabolite of THC, indicating that defendant had used cannabis at some point within the past few days or weeks. Based on the entire DRE protocol, Osborne ultimately formed an opinion that defendant was impaired by cannabis.

Officer Becker, a certified crash reconstruction officer, testified that the crash occurred during a lane change at speeds of around 25-30 MPH. Based on observations he made at the scene, he concluded that defendant's car was at fault for the crash. None of the drivers or passengers of the other cars testified.

Defendant, testifying in her own defense, explained that she had worked night shift before the crash and had slept for about two hours that morning before heading to the bank on an urgent errand. She testified that on her way there, a driver on her right merged into her lane and pushed her over where she hit two cars in the left lane. She said that one of the other drivers began shouting and kicking her car, so she drove to a nearby parking lot to pull over. Because her cell phone was out of battery, she eventually left the parking lot to drive home and call the police, which is when Officer Jewell pulled her over. She explained that she drove over the curb while turning because her power steering was out. She testified that she had not used cannabis on the day of the crash, that she uses cannabis a couple times a month, and had last used cannabis a day or two prior to the crash.

In closing argument, the state reiterated the number of clues that indicate impairment for each FST. On the walk-and-turn test in particular, the state highlighted Venables' testimony that two clues indicate impairment, and that defendant had exhibited a higher number of clues. In response, defendant emphasized her mixed results on the FSTs. She also argued that "all of the things that [the state] points to that says she's under the influence or impaired at the time of driving, can also be explained by being exhausted." The jury ultimately found defendant guilty as charged.

On appeal, in two assignments of error, defendant argues that the trial court plainly erred in permitting testimony that two or more clues on the walk-and-turn test indicate impairment and that an estimate of 30 seconds that is off by more than five seconds on the modified Romberg test is indicative of impairment. According to defendant, that testimony was scientific evidence and the trial court plainly erred in permitting it without requiring the state to lay an adequate foundation. Under our plain error analysis, we first determine whether the error is plain, which means it is an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences. *State v. Ortiz*, 343 Or App 37, 40, 578 P3d 702 (2025). We next determine whether

the plain error is harmless. *Id*. If it is not harmless, we finally decide whether to exercise our discretion to correct the error. *Id*.

With respect to defendant's first assignment of error, relating to the walk-and-turn test, we recently concluded that a trial court plainly errs when it permits an officer to testify that two or more clues on the walk-and-turn test indicate impairment. *State v. Hall*, 336 Or App 812, 819-20, 562 P3d 284 (2024), *rev den*, 373 Or 712 (2025); *see also State v. Redman*, 338 Or App 384, 385, 566 P3d 5 (2025) (affirming that permitting such testimony is plain error); *State v. Curtis*, 342 Or App 509, 510, 577 P3d 327 (2025) (same). Such testimony is the "functional equivalent of saying that the defendant failed the tests," which we have previously held is plain error for a trial court to allow. *Hall*, 336 Or App at 825; *State v. Reid*, 312 Or App 540, 543-44, 492 P3d 728 (2021) (holding that it is plain error to allow an officer to testify that a defendant's performance on FSTs was "a pass or fail"). We also explained that a jury would perceive the testimony as scientific because it is based on the underlying scientific proposition that a specific numerical score can indicate that the subject is impaired. *Hall*, 336 Or App at 819-20. That same reasoning applies to defendant's first assignment of error here. With respect to defendant's second assignment of error, relating to the modified Romberg test, we have never expressly stated that such testimony constitutes plain error, although we assume without deciding that the reasoning we outlined in *Hall* might also extend to that claim of error.

However, we pause to consider the state's argument that defendant's claimed errors cannot qualify as plain error because they are not apparent on the record without requiring the court to choose between competing inferences. *See State v. Vage*, 278 Or App 771, 777, 379 P3d 645, *rev den*, 360 Or 697 (2016) ("It is well established that an error does not qualify as plain error if the record contains a competing inference that the party may have had a strategic purpose for not objecting, and that competing inference is plausible." (Internal quotation marks omitted.)); *State v. Cone*, 289 Or App 391, 395-97, 410 P3d 347 (2017), *rev den*, 362 Or 860

(2018) (concluding that although certain testimony constituted impermissible vouching, the trial court did not plainly err by failing to strike it because defendant may have made a strategic choice not to object). Specifically, the state argues that there is a competing inference on the record that defendant had strategic reasons not to object. As we explain below, we agree with the state that the record supports the inference that defendant had strategic reasons not to object, but do not decide whether that negates the existence of plain error here because, even assuming that the trial court plainly erred and that error was not harmless, we would not exercise our discretion to correct it in this case.[2]

In deciding whether to correct plain error, we consider factors such as the gravity of the error, the nature of the case, and the ends of justice in the particular case. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). In addition to those factors, we may also consider "whether the defendant encouraged the trial court to make the error; whether the defendant made a strategic choice not to object; and whether the trial court could have corrected the error if the defendant had raised it below." *State v. Lusk*, 267 Or App 208, 212, 340 P3d 670 (2014).

In *Hall* and *Curtis*, we recently exercised our discretion to correct the trial court's plain error in permitting testimony that exhibiting two or more clues on the walk-and-turn test and the one-leg-stand test indicate impairment. In both of those cases, we concluded that the error in admitting the testimony was sufficiently grave such that the ends of justice supported reversal. *Hall*, 336 Or App at 824; *Curtis*, 342 Or App at 513. We made that determination in part because the other evidence of impairment in those cases was not particularly strong. *See, e.g.*, *Hall*, 336 Or App at 824 (the defendant denied being impaired, his blood alcohol content (BAC) was well below the legal limit, a urinalysis

---

[2] As Justice Garrett points out, our recent case law has "left unresolved the question whether a party's strategic choice not to object is relevant to the *existence* of plain error, or relevant only to the discretionary choice to correct such an error, or both." *State v. Chitwood*, 370 Or 305, 334 n 2, 518 P3d 903 (2022) (Garrett, J., dissenting) (emphasis in original); *see also State v. Lovern*, 234 Or App 502, 512 n 7, 228 P3d 688 (2010) (noting that a defendant's strategic reason not to object has been used as a consideration both in determining whether an error is apparent and therefore plain and in whether to exercise discretion).

could not prove impairment at the time of driving, and a jury would not necessarily have viewed his performance on the FSTs as poor). As in those cases, the other evidence of impairment here is similarly not conclusive and defendant argued at trial that any poor driving could be explained by her lack of sleep, her head injury following the crash, or her vehicle's malfunction.

However, this case differs from *Hall* and *Curtis* in several significant aspects. Most significantly, the record suggests that defendant may have made a strategic choice not to object to the testimony that she now challenges on appeal. *Cf. Curtis*, 342 Or App at 513-14 (concluding that the defendant's arguments and questions on cross-examination did not demonstrate a strategic reason not to object). When a defendant fails to object to testimony at trial, we can infer tactical reasons for not objecting from defendant's cross-examination and closing arguments. *State v. Mello*, 332 Or App 215, 223, 549 P3d 42, *rev den*, 372 Or 763 (2024) (the defendant's closing argument indicated that she had a strategic reason for failing to object); *Redman*, 338 Or App at 395-96 (the defendant's cross-examination suggested a strategic reason not to object).

In this case, defendant's cross-examination of the two officers and her closing argument both demonstrate that she may have chosen strategically not to object. In her cross-examination of Venables, defense counsel confirmed the number of clues on each FST that would be "considered a fail." With respect to the walk-and-turn test specifically, she confirmed that defendant's performance would be considered a fail based on exhibiting six clues out of eight. Defense counsel then asked Venables: "Okay. So of your three field sobriety tests, standardized tests, she failed one out of the three?" At that point the state objected to the use of the terms "pass or fail" for those tests, and the court sustained that objection. In her cross-examination of Pietila, defense counsel confirmed the "normal" range for the modified Romberg test and asked Pietila for a demonstration of the test to show that the test is difficult to perform even when unimpaired. Finally, in defendant's closing argument, she acknowledged that on the "walk and turn test, she gave too

many clues for both officers, but she passed the other two." Again, the state objected to the use of the terms "pass and fail" and the court sustained the objection.

We acknowledge that the problematic testimony was initially elicited by the prosecutor's direct questioning, and that the state further emphasized that testimony in closing, pointing out that defendant exhibited more than two clues on the walk-and-turn test, indicating impairment, and that her performance on the modified Romberg demonstrated "a delayed perception of time *** consistent with cannabis use." However, given that defendant intentionally brought up and used that testimony herself on cross-examination and in closing, the record supports a plausible inference that defendant strategically chose not to object. By not objecting to, but rather confirming on cross-examination the testimony establishing thresholds for impairment on the walk-and-turn test and the modified Romberg test, she could use that same methodology to demonstrate that, based on the number of clues exhibited, she did *not* meet the requirements for impairment on other FSTs.[3] And defendant made that exact argument on cross-examination and in closing, arguing that she "passed" certain FSTs.[4] We have explained that if a defendant herself characterizes FSTs as being scientific, "it is reasonable to infer that defendant had a strategic reason for not objecting during the officer's testimony." *Mello,* 332 Or App at 223.

We also consider the other evidence of impairment, which, as we have acknowledged earlier, is not necessarily conclusive evidence of impairment, but is nevertheless more extensive than the evidence presented in *Hall* and *Curtis,*

---

[3] In contrast, in *State v. Arena-Easton*, ___ Or App ___, ___ P3d ___ (2025), issued the same day as this case, we exercised our discretion to correct plain error in allowing testimony that two clues on the walk-and-turn test and one-leg-stand test indicated impairment, in part because the record in that case did not demonstrate that the defendant had strategic reasons for not objecting. *Id.* at ___ (slip op 11-12). The defendant elicited testimony about the number of clues associated with each FST, but unlike in this case, there the defendant never elicited or referenced the number of clues that indicate impairment. *Id.*

[4] As noted above, the state successfully objected to defendant's attempt to argue that she had "passed" the tests. But her attempt to use that evidence to her benefit supports the inference that she had a strategic reason for not objecting to the state's problematic evidence that a certain number of clues would indicate whether a person was impaired or not.

where we decided to exercise our discretion. Here, similar to *Hall* and *Curtis*, defendant blew a .00 BAC, the urinalysis could not demonstrate impairment at the time of driving, and a jury would not necessarily perceive her recorded performance on the FSTs as strong evidence of impairment. But she had been involved in a car crash, a crash reconstructionist determined she was at fault, there were some observations of poor driving by the arresting officer, and a full DRE was conducted and presented at trial with the conclusion that she was impaired by cannabis.

Finally, we consider that the policies of preservation and the ease with which the error could have been corrected weigh against exercising our discretion. *State v. Inman*, 275 Or App 920, 934-35, 366 P3d 721 (2015), *rev den*, 359 Or 525 (2016). We also recognize that discretion to reverse based on an unpreserved error should be exercised with "utmost caution." *Id.* at 928. For the foregoing reasons, even if the trial court plainly erred in admitting scientific testimony without requiring the state to lay a proper foundation, we would not exercise our discretion to correct the error in this case.

We turn to and briefly address defendant's third through fifth assignments of error, arguing that the trial court plainly erred in imposing certain alcohol-related special conditions of probation. Under ORS 137.540(2), a trial court has authority to "impose any special conditions of probation that are reasonably related to the crime of conviction or the needs of the probationer for the protection of the public or reformation of the probationer, or both." It is at least not obvious, based on our review of the record, that the special conditions are unrelated to the needs of the probationer for the protection of the public or reformation of the probationer, or both. Indeed, there was evidence that defendant had a past history of alcohol abuse. She also had gone through diversion in a prior DUII case that made her ineligible for diversion in this case. Given that record, it is not obvious that the trial court's imposition of the special conditions constituted plain error.

Affirmed.